IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Holding a Criminal Term
Grand Jury Sworn in on November 18, 2022

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Grand Jury Original |
| v. | : | Criminal No. |
| GERMAINE L. GRAHAM, | : | VIOLATIONS: |
| Defendant. | : | 18 U.S.C. § 1343 (Wire Fraud);<br>18 U.S.C. § 1028A (Aggravated Identity Theft) |
| | : | FORFEITURE ALLEGATION: |
| | : | 18 U.S.C. § 981(a)(1)(C), 28 U.S.C. § 2461(c); and 21 U.S.C. § 853(p) |

## INDICTMENT

The Grand Jury charges that, on or about the times and dates stated herein:

### Introduction

At all times material to this Indictment, except as otherwise indicted:

1. Company A was a private architecture firm with employees in the District of Columbia and elsewhere that provided design services for clients. Company A maintained its headquarters office in the District of Columbia.

2. Defendant GERMAINE L. GRAHAM ("GRAHAM") was an employee of Company A from January 2, 2019, until January 22, 2022. GRAHAM worked as Company A's office manager at its headquarters office.

3. As part of his duties as office manager, GRAHAM was responsible for book-keeping functions and insuring items were entered into a cloud-based service, QuickBooks Online

("QuickBooks"), including, but not limited to employee hours, invoices, billing, and receipts payable.

4. GRAHAM was responsible for preparing checks for payment to various vendors, who provided supplies and services to Company A.

5. As part of his duties as office manager, GRAHAM had access to electronic check writing in order for Company A to pay its bills. GRAHAM also had access to Company A's paper checks, however, those checks were required to be signed by a principal of Company A. Company A's President was a principal of Company A.

6. GRAHAM did not have authority to sign any of Company A's principals' names to paper checks.

7. As part of his duties as the office manager, GRAHAM was solely responsible for the administration of Company A's payroll, including, but not limited to:

    a. ensuring that employees' time and leave were entered into Company A's recordkeeping books;

    b. manually entering information into a payroll processing system used by Company A, including employees' hours work and leave;

    c. submitting bi-monthly Company A's payroll electronically to the payroll processing system;

    d. receiving confirmation that the bi-monthly payroll was processed by the payroll processing system; and

    e. ensuring that any reimbursements to employees were paid through the payroll processing system;

8. Company A contracted with a payroll processing company, SurePayroll Inc., ("SurePayroll"), a Paychex, Inc. company ("Paychex"), to process its bi-monthly payroll. Paychex's headquarters was located in and around Rochester, New York. SurePayroll's payroll processing servers were located outside of the District of Columbia.

9. GRAHAM initiated and conducted many of his duties online, including his bookkeeping responsibilities and administering Company A's payroll using a computer located at Company A's headquarters in the District of Columbia. From time-to-time, GRAHAM also worked from his residence, located in the District of Columbia.

10. Company A's employees were paid twice per month (usually on or about the 5th and on or about the 20th of the month) through SurePayroll's payroll processing system. In order to be paid, Company A's employees, directly or through a designated administrator, entered their time and leave into QuickBooks.

11. Once the bi-monthly payroll was entered into QuickBooks, GRAHAM was solely responsible for processing the payroll. To process each payroll, GRAHAM accessed SurePayroll's payroll system online and manually entered employees' time and leave. After ensuring that the payroll information was entered, GRAHAM ensured that the payroll was submitted for processing to SurePayroll. Once Company A's payroll was submitted and received by SurePayroll, SurePayroll processed the payroll causing payments, including wage and salary payments, to be made into Company A's employees' designated bank accounts.

## COUNTS ONE THROUGH EIGHT
(Wire Fraud)

12. Paragraph Nos. 1 through 11 are incorporated herein.

13. Beginning in February 2019, and continuing to January 22, 2022, in the District of Columbia and elsewhere, the defendant,

3

### GERMAINE L. GRAHAM,

devised and intended to devise a scheme to defraud his employer, Company A, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, as more fully described below.

### Purpose of the Scheme to Defraud

14. It was a purpose of the scheme to defraud for GRAHAM to enrich himself.

### Manner and Means

It was part of the scheme to defraud that:

15. GRAHAM used his position as officer manager and the administrator of Company A's payroll to access Company A's recordkeeping books and its payroll processing system to initiate false, fraudulent, and unauthorized payments from his employer into bank accounts that GRAHAM controlled.

16. GRAHAM used his position as office manager to falsely and fraudulently create and use approximately twenty-five paper Company A checks, made payable to GRAHAM, and which were purportedly signed by a Company A principal, Company A's President. GRAHAM then deposited the fraudulent and forged checks, totaling approximately $53,250, into his account at USAA, a financial institution.

17. GRAHAM entered into SurePayroll's payroll processing system, false and fraudulent information regarding the number of hours he purportedly worked, inflating the number of hours for many pay periods. In doing so, GRAHAM used his access to SurePayroll's payroll processing system to obtain additional, unauthorized wages totaling at least $104,421. As a result of GRAHAM's false and fraudulent entries into the payroll processing system, Company A paid additional funds under the Federal Insurance Contributions Act (FICA) relating to GRAHAM.

18. GRAHAM also used his access to SurePayroll to obtain additional unauthorized payments from Company A. GRAHAM entered false and fraudulent information into the SurePayroll payroll processing system falsely claiming that he was entitled to purported reimbursements from Company A. In total, GRAHAM obtained approximately $87,350 in unauthorized, false "reimbursements."

19. GRAHAM used his bank accounts at USAA and Advancial Federal Credit Union, to receive payments from Company A's bank accounts that resulted from GRAHAM's false and fraudulent entries into Company A's payroll processing system.

20. GRAHAM attempted to cover up his scheme to defraud Company A, by:

   (a) lying to his employer;

   (b) entering different information into SurePayroll than what he entered into QuickBooks;

   (c) fabricating entries into QuickBooks, including disguising unauthorized payments and checks to himself as payments to legitimate vendors; and

   (d) refusing to provide log-in information for the payroll processing system to Company A's President upon the President's request.

### Acts in Furtherance of the Scheme to Defraud

21. Between February 2019 and January 22, 2022, GRAHAM prepared approximately twenty-five Company paper checks made payable to himself to which he was not entitled.

22. Between February 2019 and January 22, 2022, GRAHAM falsely and fraudulently used the identification information of Company A's President without authorization to purportedly sign approximately twenty-five Company A paper checks.

23. Between February 2019 and January 22, 2022, GRAHAM deposited the 25 false and fraudulent Company A checks into his account at USAA.

24. Between February 2019 and January 22, 2022, GRAHAM repeatedly submitted false and fraudulent payroll information regarding GRAHAM's wages to SurePayroll.

25. Between February 2019 and January 22, 2022, GRAHAM also used Company A's payroll processing system to cause approximately 45 false and fraudulent purported reimbursement payments to be made into his accounts.

26. Between February 2019 and January 22, 2022, GRAHAM made false and fraudulent entries into Company A's recordkeeping books attempting to cover up his scheme to defraud Company A.

### Execution of the Scheme

27. On the dates set forth below, in the District of Columbia and elsewhere, GRAHAM, for the purpose of executing and attempting to execute the aforementioned scheme to defraud, did transmit and cause to be transmitted, by means of wire communication in interstate commerce, certain writings, signs, signals, pictures and sounds; that is GRAHAM caused false and fraudulent checks to be deposited at a financial institution, USAA, via a mobile application from the District of Columbia to outside of the District of Columbia; and caused falsified information in Company A's payroll to be submitted electronically on behalf of Company A, from the District of Columbia to its payroll processor, SurePayroll, which was located outside the District of Columbia:

| Count | Date (Approx.) | Description |
|---|---|---|
| ONE | April 14, 2021 | Check No. 5933 dated April 5, 2021, in the amount of $2,400.55 deposited into GRAHAM'S USAA account |
| TWO | May 10, 2021 | Check No. 5935 dated May 5, 2021, in the amount of $2,720.46 deposited into GRAHAM'S USAA account |

| THREE | June 15, 2021 | Check No. 5945 dated June 4, 2021, in the amount of $1,875,75 deposited into GRAHAMS'S USAA account |
| FOUR | July 16, 2021 | Payroll information submitted electronically to SurePayroll to initiate July 20, 2021, payroll payment to GRAHAM |
| FIVE | August 18, 2021 | Payroll information submitted electronically to SurePayroll to initiate August 20, 2021, payroll payment to GRAHAM |
| SIX | October 19, 2021 | Payroll information submitted electronically to SurePayroll to initiate October 20, 2021, payroll payment to GRAHAM |
| SEVEN | November 17, 2021 | Payroll information submitted electronically to SurePayroll to initiate November 19, 2021, payroll payment to GRAHAM |
| EIGHT | December 2, 2021 | Payroll information submitted electronically to SurePayroll to initiate December 3, 2021, payroll payment to GRAHAM |

**(Wire Fraud, in violation of Title 18, United States Code, Section 1343)**

## COUNTS NINE THROUGH ELEVEN
### (Aggravated Identity Theft)

28. Paragraphs 1 through 11, and 13 through 27 are incorporated herein.

29. On the dates listed below, within the District of Columbia and elsewhere, the defendant,

**GERMAINE L. GRAHAM,**

did knowingly transfer, possess, and use, without lawful authority, a means of identification of another person, during and in relation to a felony violation enumerated in 18 U.S.C. § 1028A, to wit, 18 U.S.C. § 1343, knowing that the means of identification belonged to another actual person.

| COUNT | Date on Check | Deposit Date | Check No. | Amount |
|---|---|---|---|---|
| NINE | April 5, 2021 | April 14, 2021 | 5933 | $2,400.55 |

| TEN | May 5, 2021 | May 10, 2021 | 5935 | $2,720.46 |
|---|---|---|---|---|
| ELEVEN | June 4, 2021 | June 15, 2021 | 5945 | $1,875.75 |

**(Aggravated Identity Theft, in violation of 18 United States Code, Section 1028A(a)(1), (c)(1))**

### FORFEITURE ALLEGATION

1.      Upon conviction of any of the offenses alleged in Counts One through Eight of this Indictment, the defendant shall forfeit to the United States any property, real or personal, constituting or derived from proceeds the defendant obtained as the result of these offenses, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c). The United States will also seek a forfeiture money judgment against the defendant in the amount of at least $253,010.

2.      If any of the property described above as being subject to forfeiture, as a result of any act or omission of the defendant,

    a.      cannot be located upon the exercise of due diligence;

    b.      has been transferred or sold to, or deposited with, a third party;

    c.      has been placed beyond the jurisdiction of the Court;

    d.      has been substantially diminished in value; or

    e.      has been commingled with other property that cannot be divided without difficulty;

the defendant shall forfeit to the United States any other property of the defendant up to the value of the property described above, pursuant to 21 U.S.C. § 853(p).

**(Criminal Forfeiture, pursuant to Title 18, United States Code, Section 981(a)(1)(C), Title 28, United States Code, Section 2461(c), and Title 21, United States Code, Section 853(p))**

A TRUE BILL

FOREPERSON

ATTORNEY FOR THE UNITED STATES IN
AND FOR THE DISTRICT OF COLUMBIA