IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | CASE NO.: 23-cr-00117 (RC) |
| ) | |
| GERMAINE L. GRAHAM, ) | |
| ) | |
| Defendant. ) | |

### GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

Beginning in February 2019, and continuing to January 22, 2022, Defendant Germaine Graham consciously chose to steal money on multiple occasions in different ways from his employer, which had entrusted him to perform the duties of its office manager. Defendant used his knowledge and access to the company's books and payroll processing system to steal $253,010, in a manner that he believed would go undetected. Defendant took advantage of the small business where everyone trusted him to be part of the team and do his job. Instead, Defendant was devious, subtle, and determined in his execution, enabling him to get away with his theft again and again for years. To reflect the seriousness of his offense and to deter him and others from engaging in such behavior, the government asks the Court to sentence Defendant to a total term of 25 months' imprisonment followed by three years of supervised release, and to order Defendant to pay restitution in the amount of $253,010, and enter a criminal forfeiture money judgment in the same amount. The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits the following memorandum in support of this request.

### I.        PROCEDURAL BACKGROUND

On April 6, 2023, a federal grand jury sitting in the District of Columbia returned an Indictment charging Defendant with eight counts of wire fraud (Count One through Count

Eight), in violation of 18 U.S.C. § 1343, and three counts of aggravated identity theft (Count Nine through Count Eleven), in violation of 18 U.S.C. § 1028A. *See* ECF No. 1; Presentence Report ("PSR"), ECF No. 23, ¶ 1. As set forth in the Indictment, Graham executed a multi-year scheme to defraud Company A in order to gain approximately $253,010, which he was not entitled to receive. *See* ECF No. 1, ¶¶ 13, 16-18. The Indictment also contained a criminal forfeiture allegation pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c). *Id*. at 8-9. On August 28, 2023, Defendant pled guilty to Count One of the Indictment, wire fraud, in violation of 18 U.S.C. § 1343. A sentencing hearing is scheduled for March 22, 2023, at 2:00 p.m.

## II.     FACTUAL BACKGROUND

Defendant is before this Court for sentencing regarding his fraudulent scheme to steal $253,010 from his employer, a private architecture firm that maintained its headquarters in the District of Columbia. *See* ECF No. 23, ¶ 13. Defendant was hired on January 2, 2019, and worked as the company's office manager until January 22, 2022. *Id*. As the office manager, Defendant was responsible for book-keeping functions and ensuring that items were entered into a cloud-based service, QuickBooks Online ("QuickBooks"), including, but not limited to employee hours, invoices, billing, and receipts payable. *Id*., ¶ 14. Defendant was also responsible for preparing checks, electronic and paper, for payment to various vendors, who provided supplies and services to Company A. *Id*. Paper checks were required to be signed by a principal of Company A and Defendant did not have authority to sign any of Company A's principals' names to paper checks. *Id*.

Defendant mostly initiated and conducted many of his duties online, including his book-keeping responsibilities and administering Company A's payroll using a computer located at Company A's headquarters in the District of Columbia. *Id*., ¶ 17. Defendant also worked from

his home, which was also located in the District. *Id*.

As the office manager, Defendant was solely responsible for the administration of Company A's payroll, including, but not limited to: (1) ensuring that employees' time and leave were entered into Company A's recordkeeping books; (2) manually entering information, including employees' hours and leave, into SurePayroll Inc. ("SurePayroll"), a payroll processing system used by Company A; (3) submitting Company A's payroll electronically twice a month to the payroll processing system; (4) receiving confirmation that the payroll was processed; and (5) ensuring that any reimbursements to employees were paid through the payroll processing system. *Id*., ¶¶ 15-16. SurePayroll's payroll processing servers were located outside of the District of Columbia. *Id*., ¶ 16.

Twice a month, Company A's employees were paid through SurePayroll's payroll processing system after they submitted directly or through a designated administrator their time and leave into QuickBooks. *Id*., ¶ 18. Once the payroll was entered into QuickBooks, Defendant was solely responsible for processing the payroll. *Id*. To process each payroll, Defendant accessed SurePayroll's payroll system online and manually entered employees' time and leave and then submitted the payroll. *Id*. SurePayroll then processed the payroll causing payments, including wage and salary payments to be made into Company A's employees' designated bank accounts. *Id*.

Defendant implemented his fraud scheme stealing $253,010 from Company A, beginning in February 2019, and continuing until to January 22, 2022. *Id*., ¶ 19. Defendant used his position as officer manager and administrator of Company A's payroll to access Company A's recordkeeping books and its payroll processing system to initiate false, fraudulent, and unauthorized payments from his employer into his bank accounts. *Id*., ¶ 20. The first method

Defendant used to implement his scheme was to falsely create and use twenty-five paper Company A checks that were made payable to himself and purportedly signed by Company A's President. *Id.*, ¶ 21. These fraudulent checks, totaling approximately $53,250, were deposited into Defendant's bank account at USAA. *Id.*

     Defendant used SurePayroll's payroll processing system to implement his second and third methods of stealing money from Company A. In the second method, for many pay periods, Defendant simply entered false information into the payroll processing system by inflating the number of hours he purportedly worked. *Id.*, ¶ 22. These additional, unauthorized, and fraudulent wages totaled at least $104,421, and caused Company A to also pay an additional $7,988 under the Federal Insurance Contributions Act (FICA) for Defendant. *Id.* Defendant's third method of stealing money from Company A was through submitting false information to SurePayroll that he was entitled to reimbursements. *Id.*, ¶ 23. In total, Defendant entered 45 false entries for reimbursements and obtained approximately $87,350 to which he was not entitled. *Id.* In total, Defendant used his bank accounts at USAA and Advancial Federal Credit Union to receive a total of $253,010 in fraudulent payments from Company A's bank accounts. *Id.* On or about April 14, 2021, Defendant caused an interstate wire communication when he deposited false and fraudulent check, Check No. 5933, dated April 5, 2021, in the amount of $2,400.55, into his USAA account via a mobile application from the District of Columbia to outside the District of Columbia. *Id.*, ¶ 26.

     Defendant attempted to cover up his scheme to defraud Company A, by: (1) lying to his employer; (2) entering different information into SurePayroll than what he entered into QuickBooks; (3) fabricating entries into QuickBooks, including disguising unauthorized payments and checks to himself as payments to legitimate vendors; and (4) refusing to provide

4

log-in information for the payroll processing system to Company A's President upon the President's request. *Id.*, ¶ 24.

### III.     THE APPLICABLE STATUTORY PENALTIES

For a violation of wire fraud, 18 U.S.C. § 1343, as set forth in Count One of the Indictment, Defendant faces a maximum sentence of twenty years of imprisonment; a fine of up to $250,000 or twice the pecuniary gain or loss of the offense; a term of supervised release of up to three years; mandatory restitution; an obligation to pay any applicable interest or penalties on fines and restitution not timely made; a forfeiture money judgment; and a $100 special assessment pursuant to 18 U.S.C. § 3583(b)(2). *See* ECF No. 23, ¶¶ 4, 95, 102-103, 114-119.

### IV.     THE APPLICABLE SENTENCING GUIDELINES RANGE

#### A.     The Guidelines Calculation

"As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark" for a sentencing determination. *Gall v. United States*, 552 U.S. 38, 49 (2007); *see also United States v. Cano-Flores,* 796 F.3d 83, 90 (D.C. Cir. 2015) ("[T]he first step for the sentencing court is to calculate the [Sentencing Guidelines] range"). While 18 U.S.C. § 3553(a) instructs the Court to "impose a sentence sufficient, but not greater than necessary to comply with the purposes set forth" in 18 U.S.C. § 3553(a)(2), Defendant's Guidelines range is one factor the Court must consider in determining an appropriate sentence. 18 U.S.C. § 3553(a)(4).

The Government agrees with the Guidelines calculations set forth in the Presentence Report ("PSR"), which are as follows:[1]

---

[1] Pursuant to 18 U.S.C. § 3553(a)(4)(A)(ii), "district courts are instructed to apply the Sentencing Guidelines issued by the United States Sentencing Commission that are 'in effect on the date the defendant is sentenced.'" *Peugh v. United States*, 569 U.S. 530, 537–38 (2013). Thus,

| | | |
|---|---|---|
| U.S.S.G. § 2B1.1(a)(1) | Base Offense Level | 7 |
| U.S.S.G. § 2B1.1(b)(1)(G) (more than $250,000 but less than $550,000) | Specific Offense Characteristic | +12 |
| | Subtotal Offense Level | 19 |
| U.S.S.G. § 3E1.1(a) | Acceptance of Responsibility | -2 |
| U.S.S.G. § 3E1.1(b) | Acceptance of Responsibility | -1 |
| | Total Offense Level: | 16 |

*See* ECF No. 23, ¶¶ 98, 32-43. Defendant is not eligible for a downward adjustment under U.S.S.G.§ 4C1.1, due to his criminal history points. *Id*., ¶ 42.

Defendant has two prior adult convictions from Alaska: (1) a 2009 conviction for driving while intoxicated which counts towards a criminal history point; and (2) a 2009 conviction for theft III which counts towards a criminal history point.[2] *Id*., ¶¶ 45-51. These two convictions place him within Criminal History Category II under the Guidelines. *Id*., ¶¶ 47. The applicable Guidelines range falls within Zone D of the Sentencing Table. *Id*., ¶ 108. The Guidelines range of incarceration for an Offense Level 16, Criminal History II, as set forth in the PSR is 24 months to 30 months. *Id*., at ¶ 96. In addition, the applicable Guidelines range for a fine regarding Count One is $10,000 to $95,000. *Id*., at ¶¶ 116.

---

the 2023 Guidelines Manual (November 1, 2023) applies here. The only possible exception to the rule, which does not apply here, is "[i]f the Court determines that use of the Guidelines Manual in effect on the date that the defendant is sentenced would violate the [E]x [P]ost [F]acto [C]lause of the United States Constitution, the court shall use the Guidelines Manual in effect on the date that the offense of conviction was committed." *Id.* (citing USSG §§ 1B1.11(a), (b)(1)).

[2] Defendant was notified of these two convictions in the Plea Agreement; however, the parties did not correctly determine Defendant's criminal history category based upon those convictions. *See* ECF No. 16 at 3. The Plea Agreement also included an advisory note that, "Your client acknowledges that after the pre-sentence investigation by the United States Probation Office, a different conclusion regarding your client's criminal convictions and/or criminal history points may be reached and your client's criminal history points may increase or decrease." *Id*.

### V. THE 18 U.S.C. § 3553(a) FACTORS SUPPORT A SENTENCE OF INCARCERATION

The Court must impose a sentence that is sufficient but not greater than necessary to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment, to afford adequate deterrence, to protect the public from further crimes of Defendant, and to provide Defendant with needed educational or vocational treatment. 18 U.S.C. § 3553(a)(2). The Court also must consider the nature and circumstances of the offense, the history and characteristics of Defendant, the kinds of sentences available, the sentencing range under the guidelines, any relevant policy statements, the need to avoid unwarranted sentencing disparities, and the need to provide restitution to the victims. 18 U.S.C. § 3553(a)(1)-(7).

#### A. The Nature and Circumstances of the Offense and the Need for the Sentence to Reflect the Seriousness of the Offense

Defendant's fraudulent scheme was not a spur of the moment event nor a crime of opportunity — it was a deliberate, concerted offense extending over about three years and using three different methods to achieve a significant theft of over $250,000 from his employer, a small architecture firm. Defendant's employer put its trust in Defendant by allowing him unfettered access to its books, checks, and payroll processing software. It trusted Defendant not to steal from it. Instead of being worthy of that trust, Defendant deliberately chose to begin his scheme to defraud Company A soon after he began his employment. Because of the trust that Company A placed in Defendant, he was able to modify and perfect how he perpetrated his scheme over a period of time.

Defendant took advantage of his role as officer manager, which gave him access to the tools he used to commit his fraud scheme. Defendant was allowed access to Company A's electronic and paper checks, which provided defendant's first method of perpetrating his fraud

scheme. Defendant's very job requirements also gave him access to company's accounting software books, where he was supposed to enter accurate information about company receipts, expenses, and employee work hours. However, Defendant also used his access to QuickBooks to fabricate false entries to disguise unauthorized payments to himself as invoice payments to legitimate vendors. Defendant was further responsible for manually inputting Company A's employees' time and attendance from QuickBooks into the SurePayroll's payroll processing software. Defendant's access to these software databases allowed him to manipulate the data to generate unauthorized payments to himself through falsely adding work hours and false reimbursements. Defendant used the very tools he was trusted with to conduct his job duties to commit his fraud scheme and to cover his tracks.

Based upon the nature and circumstances of the offense and the longevity of Defendant's implementation of his scheme, a significant period of incarceration is warranted.

### B. The Need to Promote Respect for the Law and to Deter Defendant and Others from This Type of Criminal Conduct

A within-Guidelines sentence of incarceration for Defendant's planned and deliberate fraud scheme is appropriate to promote respect for the law and to deter other would-be fraudsters, particularly when this type of fraud scheme is not uncommon and where other employers have to weigh the risk of putting their trust in employees against the risk of suffering similar significant financial loss. Although Defendant's prior theft conviction is from 2009 according to the Presentence Report, in that matter Defendant stole money, gift cards, and an iPod from employees of an office building. *See* ECF No. 23, ¶ 46. Apparently, Defendant's prior contact with the justice system was not sufficient to deter him from committing the instant fraud scheme. Moreover, Defendant was employed in a respectable position with a decent salary, and there appears to be no reason for Defendant to have committed this scheme other than greed.

In order to stop Defendant from committing future criminal acts, he needs to serve a significant period of incarceration. Given the nature and history of this matter, sentencing Defendant to a significant period of incarceration within the Guidelines will send an important message to Defendant (and the victim) that Defendant's criminal acts have significant consequences and to deter Defendant from future crimes. Other than through his guilty plea, there is no evidence that Defendant has obtained an appreciation for the rule of law. The need for deterrence weighs heavily in favor of a significant sentence of incarceration not only to deter Defendant, but also to provide a general deterrent effect.

### C.     The History and Circumstances of Defendant

The Court must look at the specific characteristics of the defendant. On the positive side, Defendant fairly quickly accepted responsibility for his conduct and entered a guilty plea and saved the government the cost of having to litigate the matter at a trial. On the negative side, defendant is not a first-time offender, and the Presentence Report suggests that Defendant was not mentally and/or emotionally incapable of avoiding his criminal conduct; instead, he chose to engage in criminal conduct intentionally because it was profitable. *Id*., ¶¶ 67-72.

Defendant grew up in a stable environment without any abuse, neglect, or deprivation. *Id*., ¶¶ 53. Both of Defendant's parents worked in responsible positions. *Id*., ¶¶ 52, 54. Defendant's parents are now retired, and he has a sister living in the greater Metropolitan area. *Id*., ¶¶ 52-57. Defendant is a 41-year-old man who obtained his high school diploma and attended Hampton University and the University of Alaska-Anchorage for three years before withdrawing without completing a degree. *Id*., ¶¶ 77-79. Defendant indicated that he was resentful that his parents did not assist him financially with his education but paid for his sister's education. *Id*., ¶¶ 55. Defendant has never been married and has no children. *Id*., ¶¶ 59.

Defendant's criminal history includes a 2009 driving while intoxicated conviction and a theft conviction. ¶¶ 45-46.

Defendant's criminal activity in this matter and his criminal history demonstrates that this fraud scheme was not just one isolated incident. Defendant did not commit a one-time, out-of-character mistake. On the contrary, Defendant deliberately decided to steal money from his employer, time-after-time, over the course of almost three years, using three different methods to commit his theft—all because he was greedy. Defendant's actions caused real financial loss to his former employer. Other than Defendant's guilty plea in which he accepted responsibility and agreed to the facts set forth in the Statement of Offense, there is no evidence that Defendant has shown any remorse for his conduct. *Id.*, ¶ 31.

### D.   The Need to Avoid Unwarranted Sentencing Disparities

There are no other defendants or co-conspirators in this case. The principal method to avoid unwarranted sentencing disparities is to apply the Sentencing Guidelines. *See Gall v. United States*, 552 U.S. 38, 54 (2007) ("Since the District Judge correctly calculated and carefully reviewed the Guidelines range, he necessarily gave significant weight and consideration to the need to avoid unwarranted disparities.").[3]

### E.   **Restitution is Mandatory**

The crime of wire fraud is an "offense[s] against property under" Title 18, and thus falls under the Mandatory Victim Restitution Act, 18 U.S.C. § 3663A. *See* 18 U.S.C.

---

[3] Other recent employment fraud cases in which defendants received within Guidelines' sentences. *See e.g., United States v. Eleanor* Milligan, Case No. 19-cr-424 (TJK) (defendant sentenced to 96 months' incarceration); *United States v. Jessica Lucas*, Case No. 19-cr-401 (TFH) (defendant sentenced to 24 months' incarceration).

§ 3663A(c)(1)(A)(ii). As a result, the Court must order that "the defendant make restitution to the victim[s] of the offense[s]." 18 U.S.C. § 3663A(a)(1). Where an offense has "a scheme, conspiracy or pattern of criminal activity," as an element of the offense, the MVRA permits broad restitution. 18 U.S.C. § 3663A(a)(2) states in pertinent part:

> [T]he term victim means a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered including, in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity, any person directly harmed by the defendant's conduct in the course of the scheme, conspiracy or pattern.

18 U.S.C. § 3663A(a)(2). Defendant's offense – wire fraud – has an element "intent to defraud," and is a scheme offense.

The government requests that at the time of the sentencing hearing, the Court order Defendant to pay restitution in the amount of $253,010, as set forth in the plea agreement. *See* ECF No. 16 at, 8-9. However, of that amount, $25,000 should be ordered to be paid to an insurance company that partially compensated Company A for Defendant's fraud scheme. See ECF No. 23, ¶ 118.

### F.    Forfeiture

The Government also requests the Court impose a forfeiture money judgment as Defendant agreed to in the plea agreement, in the amount of $253,010, which represents the proceeds Defendant received as part of his wire fraud scheme. *See* ECF No. 16 at 9-10; ECF No. 19)(Consent Order of Forfeiture). "Criminal forfeiture is not an independent substantive offense, nor is it even an element of an offense. It is instead 'an aspect of punishment imposed following conviction of a substantive criminal offense.'" *United States v. Day*, 416 F. Supp.2d 79, 84 (D.D.C. 2006) (quoting *Libretti v. United States*, 516 U.S. 29, 39 (1995)), *aff'd in part on other grounds and rev'd in part on other grounds*, 524 F.3d 1361 (D.C. Cir. 2008). Since Defendant

11

dissipated all the traceable proceeds of his fraud scheme involving these transactions, the government requests the Court impose a forfeiture money judgment.

## **CONCLUSION**

WHEREFORE, for the foregoing reasons, the Court should sentence Defendant to a total term of 25 months' imprisonment followed by three years of supervised release, and to order Defendant to pay restitution in the amount of $253,010, and enter a criminal forfeiture money judgment in the amount of $253,010 and order payment of the mandatory special assessment. This within-Guidelines' sentence is appropriate given all the § 3553(a) factors here. Such a sentence would be sufficient but not greater than necessary to achieve the purposes of sentencing.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:   */s/ Diane G. Lucas*
DIANE G. LUCAS (D.C. Bar No. 443610)
Assistant United States Attorney
United States Attorney's Office
District of Columbia
601 D Street NW
Washington, DC 20530
(202) 252-7724 (Lucas)
Diane.Lucas@usdoj.gov